UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES K.[1],

        Plaintiff,

v.                                                                                        23-CV-145 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____

## DECISION AND ORDER

Plaintiff James K. brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, seeking review of the decision of the Commissioner of the Social Security Administration that he was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 8. The Commissioner responded and cross-moved for judgment on the pleadings. Dkt. 12. Plaintiff replied. Dkt. 13. For the reasons below, the Court denies Plaintiff's motion and grants the Commissioner's cross-motion.

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this decision and order identifies Plaintiff by first name and last initial.

## **PROCEDURAL HISTORY**

This action originates from Plaintiff's application for Disability Insurance Benefits ("DIB") and his application for Supplemental Security Income ("SSI"), both filed on November 19, 2018.[2] Tr. 641–647.[3] Plaintiff's applications were initially denied on February 9, 2019, and May 2, 2019. Tr. 333–336, 339–343. He requested a hearing before an administrative law judge ("ALJ"). ALJ Dennis Katz issued an unfavorable decision on July 30, 2020. Tr. 212–230. On January 11, 2021, Plaintiff's request for Appeals Council review was granted for further review under the substantial evidence provision of the Social Security Administration Regulations (20 C.F.R § 404.970). Tr. 233–235. On remand, ALJ Stephen Cordovani held a hearing on October 26, 2021, and, on November 29, 2021, issued a decision finding that Plaintiff was not disabled. Tr. 14–26, 35–73. Plaintiff then appealed to this Court. Dkt. 1.

---

[2] Plaintiff applied for both DIB and SSI.  To receive DIB, a claimant must show that he/she became disabled while meeting the Act's insured status requirements.  *See* 42 U.S.C. § 423(d)(1)(A); *Schillo v. Kijakazi*, 31 F.4th 64, 69–70 (2d Cir. 2022).  SSI, on the other hand, "provides benefits to each aged, blind, or disabled individual who does not have an eligible spouse and whose income and resources fall below a certain level."  *Clark v. Astrue*, 602 F.3d 140, 142 (2d Cir. 2010) (quoting 42 U.S.C. § 1382(a)) (internal quotation marks omitted).  The Social Security Administration uses the same five-step evaluation process to determine adult eligibility for both programs.  *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

[3] The filing at Dkt. 4 is the transcript of the proceedings before the Social Security Administration.  All references to Dkt. 4 are hereby denoted "Tr. ___."

## **LEGAL STANDARDS**

I. **DISTRICT COURT REVIEW**

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). The Commissioner's factual findings are conclusive when supported by substantial evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).

The Court does not determine *de novo* whether the claimant is disabled, but the Commissioner's conclusions of law are not given the same deferential standard of review. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). If there is a reasonable basis of doubt about whether the ALJ applied the correct legal standards, then upholding the determination "creates an unacceptable risk that a claimant will be deprived of the right to have his disability determination made according to correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)) (holding that the Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the . . . Act.").

## II. DISABILITY DETERMINATION

Disability under the Act is determined under a five-step test. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities and is normally done for pay or profit. 20 C.F.R. §§ 404.1572, 416.972. If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Absent such impairment, the claimant may not claim disability. *Id.*

Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If such criteria are met, then the claimant is declared disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Even if the claimant is not declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a holistic assessment of the claimant's medical impairments, both severe and non-severe, that evaluates the claimant's

ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. 20 C.F.R. §§ 404.1545, 416.945.

In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, the analysis proceeds to the fifth and final step. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her/his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1560(c), 416.960(c). Here, the burden of proof shifts from the claimant to the Commissioner to prove that a significant number of jobs in the national economy exists that the claimant can perform given her/his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c); *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

## DISCUSSION

### I. THE ALJ'S DECISION

The ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2016. Tr. 16. The ALJ determined that Plaintiff had not engaged in substantial gainful activity from March 17, 2015, his alleged onset

date, through December 31, 2016, his date last insured. *Id.* The ALJ also found that through the date last insured, Plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical spine status/post fusion; obesity; and left eye with retinal detachment. Tr. 17. The ALJ concluded, however, that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18–19.

After considering the entire record, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [Plaintiff] can lift twenty pounds occasionally and up to ten pounds frequently, with no restrictions in sitting, standing, or walking. [Plaintiff] can occasionally climb ramps or stairs, but never ladders, ropes, or scaffolds. [Plaintiff] can occasionally reach overhead and laterally, bilaterally. [Plaintiff] can frequently handle, finger, and feel. [Plaintiff] can never work at unprotected heights and dangerous moving mechanical parts. [Plaintiff] can have only occasional exposure to extreme heat, extreme cold, wetness, or humidity. [Plaintiff] cannot perform field of vision work with the lower left field of vision. [Plaintiff] can occasionally perform work requiring far acuity. [Plaintiff] can avoid normal work hazards such as boxes on the floor, approaching objects, vehicles, or open doors. [Plaintiff] can read newspaper print and view computer terminals. [Plaintiff] can tell the difference between different shaped small nuts and bolts and other objects.

Tr. 23–24.

The ALJ found that through the date last insured, Plaintiff was unable to perform any past relevant work. Tr. 24. But the ALJ concluded that Plaintiff was not disabled because his age, education, work experience, and RFC allowed him to perform jobs existing in significant numbers in the national economy. *Id.* As such,

6

according to the ALJ, Plaintiff had not been under a disability from March 27, 2015, his alleged onset date, through December 31, 2016, his date last insured. Tr. 25.

## II. PLAINTIFF'S ARGUMENT

Plaintiff argues the ALJ improperly rejected Dr. Dhiman's medical opinion, instead substituting his own lay opinion for that of a chosen medical expert. Dkt. 8–1 at 12. Plaintiff further argues that remand for calculation of benefits is warranted because the record supports disability. *Id.* at 16.

## III. ANALYSIS

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013). The Second Circuit has held that, where "'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity' a medical source statement or formal medical opinion is not necessarily required[.]" *Monroe v. Comm'r*, 676 F. App'x. 5, 8 (2d Cir. 2017) (quoting *Tankisi v. Comm'r,* 521 F. App'x 29, 34 (2d Cir. 2013)). *See also Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019) (affirming Commissioner's final decision despite lack of medical opinion expressly discussing Plaintiff's physical limitations and ALJ's reliance on treatment notes to formulate the RFC).

On October 26, 2021, Dr. Dhiman testified about his opinion regarding Plaintiff's impairments that existed from March 17, 2015, through December 31, 2016. Tr. 50–56. After review of the file, he opined Plaintiff "equals the listing" and "may even meet Listing 1.15," and listed degenerative disk disease of the cervical

7

spine, diabetes mellitus, and high blood pressure as "the primary medically determinable impairments." *Id.* at 52.[4] In support of this, Dr. Dhiman relied on EMG testing from April 2015 showing carpal tunnel syndrome of the left hand; a July 2020 MRI showing moderate-to-severe foraminal narrowing; physical therapy notes from 2015; and a form from May 2015 where Plaintiff rated his limitations in completing various tasks. Tr. 55–56, 772, 893, 1881.

"When an adjudicator at the hearings level obtains [a medical expert ("ME")] ME testimony or written responses to interrogatories about whether an individual impairment[ ] medically equals a listing, the adjudicator cannot rely on an ME's conclusory statement that an individual impairment[ ] medically equals a listed

---

[4] Listing 1.15 requires the following:

> (A) a neuro-anatomic distribution of one or more of pain, paresthesia, or muscle fatigue, consistent with compromise of the affected nerve; and (B) radicular distribution of neurological signs evidenced by (1) muscle weakness and (2) signs of nerve root irritation, tension, or compression, consistent with compromise of the affected nerve root, such as positive Spurling tests, limited functioning of both upper extremities, or a positive straight leg raise test, and either (3) sensory deficits or (4) decreased deep tendon reflexes; and (C) findings on imaging consistent with compromise of a nerve root in the cervical or lumbosacral spine; and (D) physical limitations lasting, or expected to last for a continuous period of at least 12 months, and medical documentation establishing either (1) a documented medical need for a walker, or bilateral assistive devices, or (2) inability to use one upper extremity for fine and gross movements with a documented medical need for a one-handed assistive device, or (3) inability to use both upper extremities for activities involving fine and gross movements.

20 CFR Part 404 Subpart P, Appendix I, 1.15.

impairment[ ]." Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4. If that ME finds "that the individual impairment[ ] medically equals a listed impairment, the adjudicator must ask the ME to identify medical evidence in the record that supports the ME's statements. *Id.* "Whether an impairment[ ] medically equals the requirements of a listed impairment is an issue resolved for the commissioner." *Id.*

Regarding whether the evidence showed nerve root damage, Dr. Dhiman stated "there's a number of MRI's . . . that kind of state that there is nerve root and neural foraminal narrowing" and "documentation of decreased strength of the left upper extremity." Tr. 54–55. Dr. Dhiman further testified that, "no documentation of a compromised nerve root" existed, however, "there is documentation that there is definite moderate to severe neural foraminal narrowing and spinal canal stenosis that . . . would be reasonable for the claimant's left upper extremity symptoms." *Id.* at 56. When asked if evidence in the record indicated an inability to use both "upper extremities to the extent that neither one could be used to independently initiate, sustain or complete work-related activities," Dr. Dhiman stated the evidence would "show . . . moderate impairments of the upper extremities." *Id.* at 59. Dr. Dhiman additionally stated that Plaintiff could lift "20 pounds occasionally and ten pounds frequently," and could occasionally bilaterally reach "above the head." *Id.* In later clarifying whether Plaintiff equaled or met listing 1.15, Dr. Dhiman stated Plaintiff "equaled [listing 1.15] because I don't see any

9

documentation of him using . . . an assistive device for his upper extremities." *Id.* at 60.

The ALJ determined Dr. Dhiman's testimony that Plaintiff equaled Listing 1.15 was contradictory and his conclusions about the listings were wholly unsupported and, thus, found this portion of Dr. Dhiman's findings not persuasive. Tr. 23. Additionally, the ALJ found that Dr. Dhiman's conclusion that "a bilateral inability to use the upper extremities could be implied by just a left shoulder injury" was "contraindicated by examination findings from the relevant period showing improvement of the claimant's shoulder symptoms." *Id.* These are appropriate reasons to afford less weight to a limitation within an opinion. *See Kelsey v. Comm'r of Soc. Sec.,* 335 F. Supp 3d 437, 443 (W.D.N.Y. 2018) ("It is an appropriate exercise of discretion for an ALJ to afford little weight to a medical opinion that is internally inconsistent.").

Plaintiff argues that the ALJ improperly rejected this portion because "Dr. Dhiman was firm in his belief that . . . Plaintiff equaled–versus met– [l]isting 1.15." Dkt 8–1 at 14. This burden, however, is on the claimant to show that she meets or medically equals the criteria for a particular listing. *See McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014); *see also* 20 C.F.R. § 416.926(a) ("[A claimant's] impairment[ ] is medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment.").

Remand is only appropriate where the Court is "unable to fathom the ALJ's rationale in relation to evidence in the record." *Berry v. Schweiker,* 675 F.2d 464,

10

469 (2d Cir. 1982). The burden of proving a medically determinable impairment rests on the claimant. *Young v. Saul,* No. 23-CV-331F, 2020 WL 5814456, at *4 (W.D.N.Y. Sept. 30, 2020) ("If a claimant demonstrates the existence of a medically determinable impairment, he then bears the burden of presenting evidence to establish severity.") (citing *Taylor v. Astrue*, 32 F. Supp 3d 253, 265 (N.D.N.Y. 2012) (internal quotations omitted).

The ALJ found that the functional limitations that Dr. Dhiman testified to were "supported by his analysis" and "generally consistent with findings of limited, but not quantified range of motion." Tr. 23. He determined this portion of his assessment to be persuasive, aside from Dr. Dhiman's limitation that Plaintiff can occasionally reach, because that limitation "is somewhat inconsistent with the record." *Id.* Plaintiff asserts that the ALJ erred in finding Dr. Dhiman's testimony regarding Plaintiff's functional limitations generally persuasive because it was "blatant cherry-picking." Dkt. 8–1 at 15. "[C]herry-picking evidence occurs when administrative law judges credit information consistent with their findings while ignoring or discrediting inconsistent information from the same sources without providing plausible reasons." *Strange v. Comm'r of Soc. Sec.,* No. 13-CV-527, 2014 WL 4637093, at *9 (N.D.N.Y. Sept. 16, 2014). Here, the ALJ's decision provided plausible reasons for discrediting the inconsistent testimony provided by Dr. Dhiman. Thus, Plaintiff's argument is without merit.

Despite Plaintiff's assertion, the ALJ's determination that he did not meet or medically equal the requirements of Listing 1.15 is not unfathomable. *See Berry,*

11

675 F.2d at 469. The ALJ was entitled to discount Dr. Dhiman's testimony because it lacked consistency and was not supported by the record. He permissibly found Dr. Dhiman's testimony regarding Plaintiff's functional limitations generally persuasive because they were consistent with the record. "It is the plain-tiff's [sic] burden 'to demonstrate that [his] disability [meets] "all of the specified medical criteria"' of a spinal disorder." *Ryan v. Astrue,* 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) (quoting *Otts v. Comm'r of Soc. Sec.,* 249 F.App'x 887, 888 (2d Cir. 2008)). Plaintiff has not met this burden. Thus, remanding for calculating benefits is not warranted.

The RFC determination is "the most [a claimant] can do despite [his] limitations," and is based on a review of all relevant evidence in the case, including medical and non-medical evidence. 20 C.F.R § 416.495(a). Under the substantial evidence standard of review, Plaintiff cannot merely disagree with the ALJ's weighing of the evidence or argue that evidence in the record could support his position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *See Brault v. Soc. Sec. Admin. Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012). Ultimately, it is Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ, and Plaintiff fails to do so here. *Smith v. Berryhill,* 740 F. App'x 721, 726 (2d Cir. 2018).

## CONCLUSION

For these reasons, the Court **GRANTS** the Commissioner's cross motion for judgment on the pleadings (Dkt. 12–1) and **DENIES** Plaintiff's motion for judgment on the pleadings (Dkt. 8–1). The Clerk of the Court will close this case.

SO ORDERED.

Dated:      January 31, 2024
            Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE